IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOEBLERS' PENNSYLVANIA HYBRIDS, INC.,<br><br>      Plaintiff<br><br>      v.<br><br>TAYLOR DOEBLER III, an individual, and DOEBLER SEEDS LLC d/b/a T.A.DOEBLER SEEDS,<br><br>      Defendants | No. 4:03-CV-1079<br><br><br>Judge James McClure<br><br>**JURY TRIAL DEMANDED** |

**ANSWER TO PLAINTIFF'S COMPLAINT
WITH AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS**

Defendants, through their undersigned counsel, file the following Answer

with Affirmative Defenses and Counterclaims to Plaintiff's Complaint:

1.      Admitted.

2.      Admitted with the correction that the Defendants' business address is

39 Seeds Lane, Jersey Shore, Pennsylvania 17740.

3.      Denied as stated.  Mr. Doebler was an employee, a stockholder, the

secretary/treasurer and a board member of DPH and in said capacities performed

significant managerial and policy-making functions on behalf of DPH until

1

approximately a year ago when he was frozen out from all involvement in DPH by Willard Jones and William Camerer.

4.    Admitted in part; denied in part.  It is admitted that Doebler Seeds, LLC is a limited liability company.  It is admitted that a copy of the Certificate of Organization is attached to Plaintiff's Complaint as Exhibit A.  The remaining averments of paragraph 4 are denied, and to the contrary it is averred as follows: The registered office of Doebler Seeds, LLC has been changed to 39 Seeds Lane, Jersey Shore, Clinton County, Pennsylvania 17740.  The effective date for formation of the company was January 1, 2003.  The limited liability company was created for tax purposes and is a successor to T. A. Doebler & Son, a partnership.

5.    Denied as stated.  Doebler Seeds, LLC filed a fictitious name of T. A. Doebler Seeds and intended to do business under that trade name.  A fictitious name amendment was filed on October 27, 2003, to amend the name and principal place of business to T.A. Seeds, 39 Seeds Lane, Jersey Shore, Pennsylvania in response to the preliminary injunction entered in this matter. Doebler Seeds has ceased doing business as T. A. Doebler Seeds and will not conduct business under that name in the future unless the preliminary injunction entered by the court is overturned on appeal or at trial.

6.    Admitted.

7.    Denied.  The averments of paragraph 7 are denied generally.

8.    Admitted, with the clarification that T.A. Doebler & Son grew hybrid and open-pollinated seed corn as well as marketed those products to the public.

9.    Admitted, with the qualification that T.A. Doebler & Son never ceased producing hybrid and open-pollinated seed at any time--that business continues to be carried on by its incorporated successor to the present.  Further, Doebler & Son continued to market its own seed corn under its own name for 20 years--from 1952 to 1972.

10.    Admitted in part; denied in part.  Doeblers' Pennsylvania Hybrids, Inc. (DPH), was formed by T.A. Doebler, Jr., to sell and market the seed corn Doebler  produced, processed and bagged.  Its original shareholders were Taylor A. Doebler, Jr., his mother, Hazel K. Doebler, his nephew, William R. Camerer, and his son-in-law, Willard L. Jones.   Doebler, Jr.'s plans at that time also included expansion of the Doebler & Son research and testing programs as well as expansion of the partnership's sales and testing territory into neighboring states, and DPH established a sales team of three persons.  DPH was permitted to use the Doebler name to market Doebler's seed corn but the name, which had acquired a

secondary meaning associated with Doebler's high quality seed corn, was never sold or licensed to DPH.

11.    Denied.  It is specifically denied that DPH has continuously been the one and only entity whose products are commonly known to the public as DOEBLER'S products.  From at least the time that T. A. Doebler & Son began selling its seed corn to the public in the early 1950s, its products as well as those of its successor company along with DPH has been commonly known to the public as Doebler's products.  Although DPH carried on the marketing, research and retail sale of the seed, T. A. Doebler & Son continued to promote its product and used the name Doebler's in the marketplace.  Moreover, DPH was permitted to use the Doebler name by Taylor Doebler Jr.  The name belonged to the grower whose high quality products it was associated with, not to the company formed to market those products.

12.    Denied as stated.   Over the last 30 years, DPH has advertised agricultural seed products in commerce throughout the United States and within the Middle District of Pennsylvania under the Doebler's name.  The products which DPH advertised and promoted were not its products but were products  it was authorized to sell by T. A. Doebler & Son, the predecessor company to

Doebler Seeds, LLC, as well as other growers.  During the last 30 years, and

indeed, from the inception of T.A. Doebler & Son in the 1950s, as well as Taylor

A. Doebler, Jr., and Doebler III, used the name Doebler's in the promotion of the

products being grown by Doebler & Son and sold by DPH.  Further, it is

specifically denied there is a DOEBLER'S "mark" lawfully registered to DPH as

implied by Plaintiff.

13.    Admitted in part; denied in part.  It is admitted that during the last 30

years, indeed during the last 50 years, the Doebler's name has come to represent a

source of a high quality product within the agricultural and seed products industry;

however, that product was grown by Taylor Doebler, Sr, Taylor Doebler, Jr., and

his son Taylor Doebler III, the within Defendant, and it is their seed corn that

enjoys this reputation. The Plaintiff DPH never grew any seed corn and enjoys no

reputation as the source of the high quality seed corn produced by others that it

sells.  Plaintiff's conclusion that this high level of recognition in the agricultural

marketplace is a direct and proximate result of the investments in advertising and

packaging that DPH has developed the DOEBLER'S mark constitutes a conclusion

of law and is therefore deemed denied.  Further, it is specifically denied that a

DOEBLER'S "mark" is lawfully registered to DPH.   To the contrary, the name

5

Doebler's has been used in the seed corn industry since the 1950s when T.A.

Doebler & Son was established and continued through its successor, Doebler

Seeds, LLC.

14.    Denied as stated.  It is admitted that seed corn and other agricultural

products supplied to DPH by Defendant and other growers are shipped by DPH to

distributors and end users in bags which display the Doebler's name because the

Doebler family permitted DPH to use its name on high quality seed it produced

and on high quality seed produced by other growers, including Camerer Farms. It

is denied that there is a DOEBLER's mark lawfully registered to DPH or that DPH

is the owner of a DOEBLER's mark as implied by Plaintiff.  To the contrary, the

name Doebler's has been used in the seed corn industry since the 1950s when T.A.

Doebler & Son was established and has continued through its successor, Doebler

Seeds, LLC.

15.    Denied.  The averments of paragraph 15 are denied generally.

Further, prior to the formation of DPH, the sale and marketing of the Doebler's

products were done by T. A. Doebler & Son, which placed its products into the

stream of commerce under the name Doebler's, which was the entity responsible

for the quality of its product. Further DPH was never responsible for the quality of

the product--the quality was determined by the methods and techniques utilized by the growers.

16.    Denied as stated.  Defendant Taylor Doebler III became an employee of DPH in 1986, and later became a shareholder and director.  He became a partner of T. A. Doebler & Son in 1994.  Mr. Doebler was an employee, a stockholder, the secretary/treasurer and a board member of DPH until approximately a year ago. He was frozen out of all involvement with and participation in the affairs of DPH by William Camerer and Willard Jones, the majority owners and directors of DPH in order to entrench themselves and for no proper corporate purpose.

17.    Admitted.

18.    Denied as stated.  It is admitted that DPH does research on the characteristics, adaptability , and performance of varieties of seed corn. That research was paid for by Doebler & Son, shared with the proprietors of Doebler & Son (including Doebler III) and others, including Camerer, for 30 years without any restriction of the growers' use of the research.   Further, DPH did that research under license from the originators/owners of the hybrids on condition that it be shared with every other licensed seed company which planted test strips.

19.    Denied as stated. As a proprietor of Doebler & Son, Doebler III purchased and used the information, which was created, in part, for his benefit as a grower as well as for the benefit of every other licensed seed company in the country.  There was never any restriction on his use of the information, which was never a particular trade secret of DPH but rather the general knowledge of the industry.  Further, as a partner of T. A. Doebler & Son, which supplied products to DPH for sale, Taylor Doebler III became familiar with agricultural know-how and manufacturing techniques, marketing strategies, product specifications, composition of materials, and the identity of DPH's customers. The grower which created DPH to market DPH's products was never restricted or prohibited from using research data and information created for its benefit.  The remaining averments of paragraph 19 are denied generally.

20.    Denied as stated.  Doebler III agreed only to keep confidential information he received as a board member of DPH.  After he resigned from the board, he no longer had access to that information.  Moreover, other board members, including Camerer specifically, were free to use information received as board members as they pleased.

21.    Denied.  The Confidentiality Document is a writing which speaks for itself.  By way of further reply, it was prepared and executed to prevent Camerer from using or disclosing information he received as a board member to compete with DPH.  When Camerer insisted he was entitled to use board information as he saw fit,  DPH acquiesced in that decision.

22.    Denied.  The Confidentiality Document speaks for itself.  By way of further reply, Defendants incorporate their answers to #20 and #21 above

23.    Denied.  The Confidentiality Document speaks for itself.  Further, the Confidentiality Document governed Doebler's activities while he remained a Board member of DPH and related to information he received as a board member. Defendants incorporate their prior answers.

24.    Denied.  It is denied that Taylor Doebler III caused to be prepared and executed numerous non-conpetition/non-disclosure agreements with various employees of DPH, and to the contrary it is averred that said proposed agreements were caused to be prepared by Willard Jones, the DPH President. Jones elected to require new and future employees only to sign the non-competition agreements. Jones never required existing employees to sign restrictive covenants--among other reasons, he was unwilling to pay any fresh consideration to existing employees for

agreements not to compete, although he now claims they were vital to corporate survival of Plaintiff. The document attached as Exhibit C to Plaintiff's Complaint speaks for itself.

25.    Admitted in part; denied in part. It is admitted that on or about October 31, 2002, William R. Camerer, III, was elected as President of Plaintiff with the support of Willard Jones, notwithstanding that Jones had just participated in firing Camerer for the latter's suspected participation in a suspected embezzlement. While Taylor Doebler III remained a board member, he had no ongoing participation in the affairs of Plaintiff. Doebler III was a minority shareholder who owned 20.5% of the stock of DPH.

26.    Denied as stated. Doebler III was constructively discharged. Jones and Camerer made clear that he would have no ongoing role in the business and his only option was to sell all his interests to them.

27.    Denied as stated. Doebler was obliged to sell his shares in DPH once his employment terminated.

28.    Denied. To the contrary, after the death of his father in August 2002, Taylor Doebler, III, in order to continue the family business, re-structured the partnership, T. A. Doebler & Son, into a limited liability company for tax and

related reasons, to become effective January 1, 2003. It is specifically denied that Taylor Doebler III was bound by the terms of the Board Member Acknowledgement Document after his tenure on the DPH board ended, or indeed received any ongoing information about DPH, or used any information from DPH to set up his business. It is specifically denied that Taylor Doebler III imposed non-competition provisions on employees of DPH, hired any DPH employees who were subject to restrictive covenants or was under a fiduciary duty or other duty of loyalty to DPH following his termination or any other duty, imposed by contract or law, to refrain from competition . The remaining averments of paragraph 28 are denied generally.

29.    Denied. It is specifically denied that DOEBLER'S is a mark of Plaintiff, DPH, and to the contrary it is averred that the name Doebler's has been synonymous with T.A. Doebler & Son, the predecessor to Doebler Seeds, LLC, since the 1950s. It is specifically denied that DOEBLER's is a mark lawfully registered to DPH or is a mark owned by DPH.   To the contrary, Defendant Taylor A. Doebler, III, along with others, owns the trade name Doebler's, Inc., as well as the trade name Doebler's Hybrids, Inc. Further, the business name of Defendant is now T.A. Seeds.

30.     Admitted in part; denied in part. It is admitted that Taylor Doebler, III has commenced a dialog with existing customers and affiliates of DPH and that he has represented that his company has "70 years of history." Plaintiff's implication that this statement is untrue is denied inasmuch as his company is the successor to T. A. Doebler & Son, which began operation in the early 1950s. It is specifically denied that the DOEBLER'S mark has been developed or established by DPH, again inasmuch as Doebler Seeds, LLC and T. A. Doebler & Son has been using the Doebler's name, the family name, in commerce since the 1950s. The remaining averments of paragraph 30 are denied generally.

31.     Denied. The Defendants restructured the partnership, T. A. Doebler & Son, after the death of T. A. Doebler, Jr., to a limited liability company of Doebler Seeds, LLC, and filed a fictitious name, T. A. Doebler Seeds, later amended to T.A. Seeds.   For reasons described above, Doebler III owns the names he has used and, in any event, has ceased using the Doebler name pending a trial on the merits. The remaining averments of paragraph 31 are denied generally.

32.     Denied. The Defendants restructured the partnership, T. A. Doebler & Son, after the death of T. A. Doebler, Jr., to a limited liability company of Doebler Seeds, LLC, and filed a fictitious name, T. A. Doebler Seeds, later

amended to T.A. Seeds.  Defendants have made continuing efforts to sell the same type of product to some of the same customers which T. A. Doebler & Son has been selling since the early 1950s.  Defendants have used only names they own and which accurately identify the origin of the corn Doebler produces.  Defendants incorporate the averments of prior paragraphs herein.The remaining averments of paragraph 32 are denied generally.

33.    Admitted in part; denied in part.    It is admitted only that Defendant Taylor Doebler III learned the identification of employees of DPH during his tenure as an employee, shareholder, officer and director of DPH.  By way of further reply, none of the alleged "key" employees were subject of any restrictive covenant or nondisclosure.  On the contrary, Willard Jones placed such little significance on their retention that he was unprepared to pay any consideration for restrictive covenants or nondisclosure agreements. It is further denied that Doebler III solicited or recruited DPH employees; on the contrary, he explicitly requested they remain with DPH through the 2002 selling season to avoid any loss to DPH. All of the employees hired by Defendant voluntarily resigned and sought employment because they were unwilling to continue working for DPH.   Further, it is specifically denied that Defendants have been or are competing unlawfully

with Plaintiff or that it trades on the goodwill and reputation of DPH and its marks. The remaining averments of paragraph 33 are denied generally.

34.     Denied.   The conclusive allegations of paragraph 34 are denied generally.

35.     Denied.  The conclusive allegations of paragraph 35 are denied generally.  All computer diskettes or information contained on software which was the property of DPH have been returned to DPH.  None of that information was used by Defendants.

36.     Denied.  The conclusive allegations of paragraph 36 are denied generally.  Further, is specifically denied that Defendant Taylor Doebler III at any time acted unlawfully or that any use was ever made of the diskettes.

37.     Denied.  The conclusive allegations of paragraph 37 are denied generally.   Further, it is specifically denied that any act of Defendants has been unlawful or a direct act of infringement.  As noted Defendants have ceased using the name Doebler's pending final trial

38.     Denied.  The conclusive allegations of paragraph 38 are denied generally.  By way of further reply,  the public associates the name Doebler's with

the high quality seed corn produced by the Doebler family for the last 50 years or more.

Count I
Federal Unfair Competition
False Designation of Origin (15 U.S.C. §1125)

39.    Defendants incorporate by reference paragraphs 1 through 38 above.

40.    Denied.  The averments of paragraph 40 are denied generally.

41.    Denied.  The averments of paragraph 41 are denied generally.

42.    Denied.  The averments of paragraph 42 are denied generally.

Further, it is specifically denied that Defendants are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

43.    Denied.  The averments of paragraph 43 are denied generally.

44.    Denied.  The averments of paragraph 44 are denied generally.

45.    Denied.  The averments of paragraph 45 are denied generally.

Count II
Federal Dilution of Trademark Rights

46.    Defendants incorporate by reference paragraphs 1 through 45 above.

47.    Denied.  Defendants have been doing business as Doebler's since the 1950s when T.A. Doebler & Son, a partnership, the predecessor to Doebler Seeds,

LLC, was formed in the 1950s.   Plaintiff utilized the name Doebler's, which the public associates with the high quality seed corn produced by the Doebler family by permission only and for the purpose of marketing Doebler's corn.  It is specifically denied that DOEBLER'S is a valid, registered mark of Plaintiff, and to the contrary it is averred that Plaintiff filed an application for registration of this mark on November 22, 2002, which  registration is being contested by Defendants. The remaining averments of  paragraph 47 are denied generally.

48.    Denied.  Defendants have been doing business as Doebler's since the 1950s when T.A. Doebler & Son, a partnership, the predecessor to Doebler Seeds, LLC, was formed in the 1950s.   It is specifically denied that DOEBLER'S is a valid, registered mark of Plaintiff, and to the contrary it is averred that Plaintiff filed an application for registration of this mark on November 22, 2002, which registration is being contested by Defendants. Defendants incorporate by reference the averments of the preceding paragraphs. The remaining averments of  paragraph 48 are denied generally.

49.    Denied.  Defendants have been doing business as Doebler's since the 1950s when T.A. Doebler & Son, a partnership, the predecessor to Doebler Seeds, LLC, was formed in the 1950s.   It is specifically denied that DOEBLER'S is a

valid, registered mark of Plaintiff, and to the contrary it is averred that Plaintiff filed an application for registration of this mark on November 22, 2002, which registration is being contested by Defendants.  It is specifically denied that Defendants are in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).  The remaining averments of  paragraph 49 are denied generally. Defendants incorporate the averments of other paragraphs dealing with their name, Doebler.

50.    Denied.  The averments of paragraph 50 are denied generally.

51.    Denied.  The averments of paragraph 51 are denied generally.

## Count III
### Common Law Unfair Competition

52.    Defendants incorporate by reference paragraphs 1 through 51 above.

53.    Denied.  The averments of paragraph 53 are denied generally.

54.    Denied.  The averments of paragraph 54 are denied generally.

55.    Denied.  The averments of paragraph 55 are denied as a conclusion of law.

## Count IV
### Breach of Board Member Agreement

56.    Defendants incorporate by reference paragraphs 1 through 55 above.

57.    Denied.  The averments of paragraph 57 are denied generally and as a conclusion of law.

58.    Denied.  The averments of paragraph 58 are denied generally.

59.    Denied.  The averments of paragraph 59 are denied generally and as a conclusion of law.

60.    Denied.  The averments of paragraph 60 are denied generally and as a conclusion of law.

Count V
Misappropriation of Trade Secrets and Confidential Information

61.    Defendants incorporate by reference paragraphs 1 through 60 above.

62.    Denied as stated.  By virtue of his ownership of Doebler & Son and his employment with DPH, Taylor Doebler III had access to business information of DPH. There were no restrictions on use of information he obtained from DPH for other purposes.  The averments that said information constituted trade secrets or proprietary information of DPH is denied generally and  as a conclusion of law.

63.    Denied.  The averments of paragraph 63 are denied generally.

64.    Denied.  The averments of paragraph 64 are denied generally.

65.    Denied.  The averments of paragraph 65 are denied generally.

66.    Denied.  The averments of paragraph 66 are denied generally.

67.    Denied.  The averments of paragraph 67 are denied generally and as a conclusion of law.

68.    Denied.  The averments of paragraph 68 are denied generally and as a conclusion of law.

69.    Denied.  The averments of paragraph 69 are denied generally and as a conclusion of law.

70.    Denied.  The averments of paragraph 70 are denied generally and as a conclusion of law.

71.    Denied.  The averments of paragraph 71 are denied generally and as a conclusions of law..

72.    Denied.  The averments of paragraph 72 are denied generally and as a conclusion of law.

Count VI
Interference with Business Relations a/k/a
Unlawful Interference with Contract and
Unlawful Interference with Prospective Economic Advantage

73.    Defendants incorporate by reference paragraphs 1 through 72 above.

74.    Denied.  The averments of paragraph 74 are denied generally and as a conclusion of law.

75.    Denied.  The identities of seed dealers and customers are generally known  in the industry.  The remaining averments of paragraph 75 are denied generally.

76.    Denied.  The averments of paragraph 76 are denied generally and as conclusions of law.

77.    Denied.  The averments of paragraph 77 are denied generally. By way of further reply, Defendants are privileged to compete with Plaintiff.

78.    Denied.  The averments of paragraph 78 are denied as a conclusion of law.  See paragraph 77 above.

79.    Denied.  The averments of paragraph 79 are denied generally and as a conclusion of law.

80.    Denied.  The averments of paragraph 80 are denied generally and as a conclusion of law.

81.    Denied.  The averments of paragraph 81 are denied generally and as a conclusion of law.

82.   Denied.  The averments of paragraph 82 are denied generally and as a conclusion of law.

83.   Denied.  The averments of paragraph 83 are denied generally and as a conclusion of law.

Count VII
Breach of Fiduciary Duty

84.   Defendants incorporate by reference paragraphs 1 through 83 above.

85.   Denied.  The averments of paragraph 85 are denied generally and as a conclusion of law.

86.   Denied.  The averments of paragraph 86 are denied generally and as a conclusion of law.

87.   Denied.  The averments of paragraph 87 are denied generally and as a conclusion of law.

Count VIII
Vicarious Liability and Respondeat Superior

88.   Defendants incorporate by reference paragraphs 1 through 87 above.

89.   Denied.  The averments of paragraph 89 are denied generally and as a conclusion of law.

WHEREFORE, Defendants, Doebler Seeds, LLC, and Taylor Doebler, III, demand judgment in their favor and against Plaintiff.

## AFFIRMATIVE DEFENSES

90.    Defendant Taylor A. Doebler III is an owner of the fictitious name Doebler's Hybrids, Inc., filed with the Department of State of the Commonwealth of Pennsylvania on November 13, 1998.

91.    Defendant Taylor A. Doebler III is an owner of the fictitious name Doebler's, Inc., filed with the Department of State of the Commonwealth of Pennsylvania on April 11, 2001.

92.    The execution of the aforementioned registrations by Camerer, Jones and DPH constitutes a judicial admission that Doebler III owns the subject names and is entitled to use them.

93.    Defendant Doebler Seeds, LLC, is the successor company to T. A. Doebler & Son, a partnership formed in the 1950s, which was restructured after the death of T. A. Doebler, Jr.

94.    The certificate of organization for Doebler Seeds, LLC was filed with the Department of State of the Commonwealth of Pennsylvania on November 15, 2002, to be effective January 1, 2003.

95.    Plaintiff filed an application with the United States Patent and Trademark Office  for registration of the work mark "DOEBLER'S" on November 22, 2002, which application has not been approved.

96.    Plaintiff has failed to establish a claim for dilution of trademark rights.

97.    Plaintiff's claims are barred by the doctrine of waiver.

98.    Plaintiff's claims are barred by the doctrine of laches.

99.    Plaintiff's claims are barred by the doctrine of estoppel.

100.   Plaintiff's claims are barred by the doctrine of unclean hands.

101.   The relief requested by Plaintiff is contrary to the provisions of the Federal Seed Law and is therefore barred by its illegality.

102.   The sale of corn products by Defendants as complained of by Plaintiff were specifically granted to Defendants by license.

103.   Plaintiff has failed to establish a claim for false designation of origin.

104.   Plaintiff has failed to establish a claim for unfair competition at common law.

105.   Plaintiff's claims for breach of board member agreement must be barred by its unclean hands, waiver, release, lack of consideration, lack of mutuality of obligation .

106.   Plaintiff has failed to establish the existence of trade secret information or trade secrets.

107.   Plaintiff has failed to allege or prove that Defendants made use of any information not generally known in the industry.

108.   After his termination by Plaintiff, Defendant was entitled to retain and use the general knowledge and know how he possessed as a result of his experience and the general skills of his trade, including information as to what varieties of seed to plant and how to grow them. The use of that general industry knowledge is not actionable and cannot be restrained.

109.   Plaintiff has failed to establish that any act of Defendants constituted an unlawful interference with contract or with prospective economic advantage.

110.   Plaintiff has failed to establish that Defendant Taylor Doebler III breached any fiduciary duty.

111.   Plaintiff's claims for breach of fiduciary duty must be barred by its unclean hands, waiver, and release.

112.   Plaintiff has failed to establish a claim for recovery under vicarious liability and respondent superior theories.

113.   Plaintiff's Complaint, including Counts I through VIII, fails to state a claim upon which relief may be granted.

114.   Plaintiff's claims for costs, disbursements, and attorney's fees must be stricken.

115.   Defendants are privileged to compete with Plaintiff for the trade of corn dealers and customers whose identities are well known and his efforts to solicit their business are neither tortious nor actionable .

116.   Defendants purchased and paid for DPH's data regarding performance, characteristics and adaptability of varieties of corn and, by custom, practice and longstanding usage both own and are entitled to use that information.

## COUNTERCLAIMS

### COUNT I
### Interference with Contractual Relations

117.   Valuable business relationships currently exist and have existed for a number of years between TAS (and its predecessor TADS) and its customers and potential customers.

118.   DPH has intentionally interfered with these relationships, as well as with prospective business relationships, by spreading damaging false information regarding TAS to TAS's customers and potential customers.

119.   TAS believes and therefore avers that this improper conduct is interfering with TAS's business and its existing and prospective contractual relationships with third parties, thus causing injury to TAS.

120.   This interference by DPH is without privilege and justification and this conduct is willful, wanton and malicious.

121.   Camerer, on behalf of DPH, has also directly interfered with the contractual relationship between TAS and Sovereign Bank.

122.   Camerer has tried to obtain confidential information from Sovereign Bank, information to which he has absolutely no right, in an attempt to sever the relationship between Sovereign Bank and TAS.

123.   DPH has also interfered with the contractual relations of TAS and its seed corn licensors, including Monsanto, in an effort to prevent TAS from selling properly licensed corn seed.

124.   Plaintiff's interference is continuing up to the present time and will continue into the future.

125.   Plaintiff is causing injury to TAS, and TAS seeks compensatory and punitive damages by reason of DPH, Camerer and Jones' intentional and malicious conduct.

## COUNT II

### Federal Unfair Competition
### False Designation of Origin (15 U.S.C. § 1125)

126.   DPH continues to use the DOEBLER formative as a mark despite the fact that DPH is no longer authorized to sell Doebler Corn, produced by either TAS or Doebler Farmland, Inc.

127.   Such action is a knowing and willful act of unfair competition designed to misappropriate the established goodwill and secondary meaning long associated with the mark of TADS and now with TAS and the Doebler's name.

128.   DPH continues to utilize this mark and attempts to trade on the mark which TAS (and its predecessor TADS) has utilized in connection with the marketing and sales of its corn seed products for over 50 years and which mark has acquired distinctiveness and a secondary meaning in the relevant marketplace.

129.   The actions of DPH constitute a false designation of origin which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation,

connection or association of DPH with TAS and is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of DPH's goods with those of TAS in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

130.   DPH has displayed a willful course of conduct in creating a likelihood of confusion and destroying TAS's goodwill established in its mark.

131.   As a result of DPH's wrongful acts alleged herein, TAS will be irreparably harmed unless DPH is enjoined from this aforesaid conduct, and, TAS has no adequate remedy at law.

## COUNT III

### Federal Dilution of Trademark Rights

132.   The actions of DPH constitute a false designation of origin which is likely to cause confusion, to cause mistake or to deceive as to the affiliation, connection or association of DPH with TAS and is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants' goods with those of DPH in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

133.    In fact, by reason of the actions of DPH, actual acts of confusion have occurred.

134.    DPH has displayed a willful course of conduct in creating a likelihood of confusion and destroying TAS's goodwill established in its mark.

135.    As a result of DPH's wrongful acts alleged herein, TAS will be irreparably harmed unless Defendants are enjoined from this aforesaid conduct, and, TAS has no adequate remedy at law.

## COUNT IV

## Wrongful Injunction

136.    Plaintiff petitioned for and was granted a Preliminary Injunction that prevented TAS from: 1) using the Doebler mark; 2) selling 21 corn seed hybrids (hereinafter the "Hybrids") that TAS had already planted and were in the process of harvesting.

137.    The injunction was wrongfully issued with regard to the Doebler mark for the reasons detailed above.

138.    The injunction was wrongfully issued with regard to the hybrids because DPH alleged, despite the existence of Federal Law that specifically provides that all seed corn is to be identified so that the consumers and farmers will

know the true identity of the hybrid, that the name given to the Hybrids by DPH was a trade secret.

139.   From a plain reading of the Federal Seed Act, it is clear that the names of the seed varieties obtained by license from Monsanto were not the trade secrets of DPH; rather, the varieties were the trade secrets of Monsanto and the other seed corn originators from whom TAS held licenses.

140.   Furthermore, assuming but not conceding that the seed corn varieties were DPH trade secrets, DPH suffered no harm from TAS's use of similar varieties.

141.   By obtaining a preliminary injunction when no basis existed for the issuance of the injunction, DPH has caused harm to TAS by preventing TAS from meeting its contractual obligations with growers and from selling the corn seed that TAS had already grown and was prepared to sell.

142.   Because the preliminary injunction was wrongfully obtained, TAS seeks damages in an amount equal to or greater than the amount of the bond set forth by the Court.

## COUNT V

### <u>Vicarious Liability and Respondeat Superior</u>

143.    As the employer of Camerer and Jones, DPH is liable for their wrongful acts alleged in Defendants' Third Party Complaint, incorporated herein by reference, under principles of vicarious liability and respondeat superior.

## COUNT VI

### <u>Abuse of Process</u>

144.    DPH brought this legal action against TAS and Doebler III knowing that its claims were without merit, solely in an effort to bankrupt TAS and force Doebler III out of the industry.

145.    Among the claims that DPH raised knowing that the claims were without merit were:

(a) claiming that TAS and Doebler III misappropriated trade secrets and confidential information when DPH knew, or should have known, that its corn seed varieties were not trade secrets.

(b) claiming exclusive ownership of the names Doebler's Hybrids, Inc. and Doebler's, Inc when DPH and its directors had acknowledged in writing that

Doebler III was a joint owner of those trade names and prohibiting him from using his own name after they publicly acknowledged his ownership;

(c) seeking to and prohibiting Doebler III from selling varieties of seed corn publicly available to any seed company under licenses from the hybrid's owners;

(d) attempting to prevent all other seed corn company or brokers from selling the same publicly available seed corn varieties in the northeast in competition with DPH ;

(e) claiming, falsely that the identity of publicly available varieties of corn is a DPH trade secret when, in fact, DPH knew or should have known that concealing the identity of its products violated federal law;

(f) seeking to enjoin Defendants from disclosing and prohibiting the identity of the products DPH  sold and thereby  utilizing court process to violate federal law;

(g) claiming falsely that DPH owned or held exclusive trade secrets in publicly available varieties of seed corn when, in fact, DPH never developed any variety of seed corn and was permitted to test seed corn varieties developed by

others only on the express condition that DPH disclose the results of its research to every other seed company in the industry who did similar tests;

(h) seeking to enjoin and prohibit the sale of seed corn varieties grown by DFI --an act done to weaken and injure DFI and to coerce DFI to become a division of DPH or owned and controlled by DPH.

146.   DPH raised all of the foregoing claims with knowledge as to their lack of merit.

WHEREFORE, Doebler Seeds, LLC, t/a T.A. Seeds, and Taylor A. Doebler, III demand judgment as follows:

1.   Enjoin Plaintiff and its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Plaintiff from the following acts within the United States or intended for dissemination within the United States:

(a) Using or authorizing any third party to use as a trademark, service mark, domain name, business name, trade name or symbol of origin the Doebler's mark and any other mark or phrase incorporating the Doebler's mark and from using any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of TAS's Doebler's mark including but not limited to any formative

associated with or derived therefrom in any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

(b) Making or displaying any statement or representation that is likely to mislead the public or the trade to believe that TAS's goods or services are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized or franchised by or are otherwise connected with TAS;

(c) Diluting the distinctive quality of TAS's Doebler's mark;

(d) Using or authorizing any third party to use in connection with the rendering, offering, advertising or promotion of any goods or services, any false description, false representation or false designation of origin, or any marks, names, words, symbols or devices which falsely associate such goods or services with TAS or tend to do so;

(e) Engaging in any other activity constituting unfair competition with TAS, or constituting an infringement of TAS's Doebler's mark or any of TAS's rights therein;

(f) Aiding, assisting or abetting any other party in doing any act prohibited by subparagraphs (a) through (e).

2.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any product or service sold, distributed, licensed or otherwise offered, circulated or promoted by Plaintiff is authorized by TAS or related in any way to TAS's products and services.

3.    Awarding TAS such damages as it has sustained or will sustain by reason of Plaintiff's infringement, dilution and unfair competition including three times the amount pursuant to 15 U.S.C. §1117.

4.    Awarding TAS all gains, profits, property and advantages derived by Plaintiff from such conduct; and pursuant to 15 U.S.C. §1117, awarding TAS an amount up to three times the amount of the actual damages sustained as a result of DPH's violation of the Lanham Act.

5.    Awarding TAS all compensatory and punitive damages as permitted by law.

6.    Awarding TAS its costs and disbursements incurred in this action, including its reasonable attorney's fees, as provided by state and federal law.

7.    Awarding TAS interest, including pre-judgment interest, on the foregoing sums.

8.     Awarding TAS such other and further relief as the Court may deem just and proper.

BARLEY, SNYDER, SENFT & COHEN, LLC


By:   s/ Rees Griffiths
　　　Rees Griffiths
　　　Court I.D. 21896
　　　Attorneys for Defendants

　　　100 East Market Street
　　　P.O. Box 15012
　　　York, PA 17405-7012
　　　(717) 846-8888

1225597